**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MICHAEL COURTNEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AVID TECHNOLOGY, INC., et al.,<br><br>Defendants. | Civil Action No. 1:13-cv-10686-WGY<br><br>**ORAL ARGUMENT REQUESTED** |
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>AVID TECHNOLOGY, INC., et al.,<br><br>Defendants. | Civil Action No. 1:13-cv-11261-WGY |

**DEFENDANTS' OPPOSITION TO WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

John D. Donovan, Jr. (BBO #130950)
William J. Dunn (BBO #666465)
Michael J. Vito (BBO #675524)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
john.donovan@ropesgray.com
william.dunn@ropesgray.com
michael.vito@ropesgray.com

*Counsel for Defendants Avid Technology, Inc., Gary G. Greenfield, and Kenneth A. Sexton*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ....................................................................................1

SUMMARY OF THE PLAINTIFFS' ALLEGATIONS.........................................................3

ARGUMENT........................................................................................................5

I. WASHTENAW CANNOT ADEQUATELY "LEAD" ANY CLASS BECAUSE IT IS NOT EVEN A MEMBER OF ANY PURPORTED CLASS...................................5

A. Washtenaw Cannot "Lead" Any Class Where It Lacks Any Cognizable Claim For Loss Causation Of Its Own.....................................................7

B. The Purposes Of The PSLRA Are Not Served By Appointing An Atypical Plaintiff With No Independent Claim as "Lead" Plaintiff.......................................9

CONCLUSION......................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACA Fin. Guar. Corp. v. Advest*,
512 F.3d 46 (1st Cir. 2008)....9

*Applestein v. Medivation, Inc.*,
No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 10, 2010)....8

*City of Bristol Pension Fund v. Vertex Pharms.*,
No. 12-cv-11654, 2012 WL 6681907 (D. Mass. Dec. 21, 2012) (Saylor, J.)....6

*City of Pontiac Gen. Employees' Ret. Sys. v.. Lockheed Martin Corp.*,
844 F. Supp. 2d 498 (S.D.N.Y. 2012) (Rakoff, J.)....6

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....2, 6, 7

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) (Tauro, J.)....6

*In re Bank One S'holders Class Actions*,
96 F. Supp. 2d 780 (N.D. Ill. 2000)....9

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825, 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007)....7

*In re Safeguard Scientifics*,
216 F.R.D. 577 (E.D. Pa. 2003)....8

*In re Sonus Networks, Inc. Sec. Lit.*,
247 F.R.D. 244 (D. Mass. 2007)....6

*In re Stone & Webster, Inc. Sec. Litig.*,
253 F. Supp. 2d 102 (D. Mass. 2003)....4

*In re Veeco Instruments, Inc.*,
233 F.R.D. 330 (S.D.N.Y. 2005)....8

*Kops v. NVE Corp.*,
No. 06-574, 2006 WL 2035508 (D. Minn. July 17, 2006)....8

*Mass. Ret. Sys. v. CVS Caremark Corp.*,
No. 12-cv-1900, 2013 WL 2278599 (1st Cir., May 24, 2013)....2

*Orton v. Parametric Tech. Corp.*,
344 F. Supp . 2d 290 (D. Mass. 2004) (Young, J.)....6

*Porzio v. Overseas Shipholding Grp.*,
No. 12 Civ. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ....................................................8

**STATUTES**

15 U.S.C. § 78u-4(a) ........................................................................................................ *passim*

## PRELIMINARY STATEMENT

The defendants oppose the sole Motion for Appointment as Lead Plaintiff because the proponent is not a *member* of the "class" he proposes to "lead."

The initial complaint[1] in this putative securities class action was filed on March 25, 2013. It alleged that Avid Technology, Inc. ("Avid") and two of its officers committed securities fraud by publishing "false" financial statements. According to the *Courtney* complaint, the "truth" about Avid's financial statements "began to emerge" when the Company disclosed on February 25, 2013 that it was postponing its fourth-quarter 2012 earnings release in order to evaluate its accounting treatment of "bug fixes, upgrades and enhancements" it provided to certain customers of its software products. *Courtney* Compl., ¶¶ 3, 37. The pleading leapt to the conclusion that Avid had improperly accounted for software updates, the market price for Avid stock was "artificially inflated" for years as a result, and fell "precipitously" when Avid disclosed the "truth." *Id*., ¶¶ 6, 38, 51, 52. Pursuant to the Private Securities Litigation Reform Act (PSLRA), the plaintiff duly publicized the pendency of the action, triggering a 60-day window within which "any member of the purported class" may move for appointment as "lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(i)(II).

On the fifty-ninth day, the Washtenaw County Employees' Retirement System filed its own complaint[2] advancing nearly identical substantive allegations, and precisely similar claims that the "truth" was revealed on February 25, 2013 by Avid's announcement of its decision to evaluate the accounting treatment of "bug fixes, upgrades and enhancements" to its software products. *Washtenaw* Compl., ¶ 71. Like the *Courtney* pleading, the *Washtenaw* complaint

---

[1] *Courtney v. Avid Tech., Inc., et al*, C.A. No. 13-10686-WGY (the "*Courtney* Complaint").

[2] *Washtenaw County Employees' Ret. Sys. v. Avid Tech., Inc., et al*, C.A. No. 13011261-WGY (the "*Washtenaw* Complaint").

alleged that members of the purported class incurred "losses *when* the truth was revealed," *id*., ¶ 85 (emphasis added), and the market price for Avid's stock fell.

But as to Washtenaw that was not true. The certification Washtenaw attached to its complaint that "sets forth all of the transactions of the plaintiff in [Avid's] . . . securit[ies]"[3] showed that Washtenaw *bought* all of its shares of Avid in March and April, 2011, and *sold* them all in July and August, 2011 – nearly a year and a half (!) *before* the "truth" was revealed and provoked the market's "precipitous" drop.[4] Accordingly, Washtenaw's own complaint established on its face that any loss that Washtenaw sustained from buying and selling Avid stock was not related to the disclosure of the "truth" that "corrected" any falsity in Avid's financial statements. But that causal connection is an essential ingredient of a securities claim. *Mass. Ret. Sys. v. CVS Caremark Corp*., No. 12-cv-1900, 2013 WL 2278599, at *8 (1st Cir., May 24, 2013). As the U.S. Supreme Court expressly noted in discussing the "loss causation" element of securities claims: "[I]f . . . the purchaser sells the shares quickly *before* the relevant truth begins to leak out, the misrepresentation *will not have led to any loss*." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005) (emphasis added). As an "in-and-out" purchaser a full eighteen months before the "truth" began to "leak out," that is precisely Washtenaw's circumstance. *Id*.

Without a claim of "loss causation" of its own, Washtenaw is in no position to "lead" anybody. It is neither a member of the "purported class" described in the *Courtney* pleading nor

---

[3] 15 U.S.C. § 78u-4(a)(2)(A)(iv).

[4] The market's "precipitous" drop was actually all of 68¢. *Courtney* Compl., ¶ 38; *Washtenaw* Compl., ¶¶ 10, 72. To be sure, as a percentage of Avid's market price that represented a decline of approximately ~9% – from $7.64 to $6.98. Washtenaw's stock sales a year and a half earlier were always at higher—and frequently significantly higher—market prices.

even of the class alleged in its *own* complaint. Washtenaw accordingly cannot satisfy the conjunctive requirements of the PSLRA for appointment as "lead plaintiff" that:

- it be "the most adequate" member of the purported class – as it is not "adequate" even to represent itself;
- have the "largest financial interest in the relief sought by the class" – as it has no cognizable financial interest in that relief; and
- "otherwise satisfies" the requirements of Rule 23 – as it could never demonstrate that it is either "adequate," "typical" or even raises "common" issues with other members of the purported class.[5]

It follows that Washtenaw's motion for appointment as lead plaintiff cannot be allowed.

**SUMMARY OF THE PLAINTIFFS' ALLEGATIONS**

Avid is a leading provider of digital audio and video technology used by creative professionals in, among other fields, the music, film, and television industries to enhance the visual and audio experiences of its consumers. *Courtney* Compl., ¶ 16; *Washtenaw* Compl., ¶ 2.

On February 25, 2013, Avid announced that it was postponing the release of its fourth quarter 2012 earnings in order to provide additional time to evaluate its accounting treatment related to bug fixes, upgrades, and enhancements (collectively, "Software Updates") to certain products. *Courtney* Compl., ¶ 37; *Washtenaw* Compl., ¶ 9. Avid's stock closed down $0.68 per share that day. *Courtney* Compl., ¶ 38; *Washtenaw* Compl., ¶ 10.

Avid has since issued a press release stating that, as part of its initial review of its accounting treatment related to Software Updates, it concluded that certain "no-charge Software Updates should have been accounted for as implied [post-contract customer support] when recognizing revenue for the original sale of the related product." Exhibit 1 (Form 8-K filed 5-21-

---

[5] 15 U.S.C. § 78u-4(a)(3)(B)(iii).

13);[6] *see Washtenaw* Compl., ¶ 11. Avid has not yet determined the full impact any adjustments may have on the Company's revenue and costs for certain historical financial statements. Exhibit 1 (Form 8-K filed 5-21-13); *see Washtenaw* Compl., ¶ 11.

On March 25, 2013, Michael Courtney brought suit on behalf of himself and a putative class of purchasers of Avid stock between April 22, 2011 and February 22, 2013, alleging that the defendants made materially false and misleading statements when describing the Company's financial results in its Form 10-Qs from April 21, 2011 until the "truth beg[an] to emerge" on February 25, 2013. *Courtney* Compl., ¶¶ 17–37. Courtney alleged that the defendants hid this "truth" from the public in order to "artificially inflate and maintain the market price of Avid securities." *Id.*, ¶ 51. Upon the disclosure of the "truth" on February 25, 2013, Courtney alleged that the "market price of Avid securities declined sharply." *Id.*, ¶ 56. Because he purchased shares he alleged to be "artificially inflated" that he still held at the time the alleged "truth" was revealed, Courtney claimed he was injured by this decline. *Id.*

On May 23, 2013, immediately before expiration of the PSLRA's 60-day deadline for "members of the purported class" to move for appointment as "lead plaintiff," 15 U.S.C. § 78u-4(a)(3)(A)(II), Washtenaw filed its own complaint, and promptly moved for consolidation of the actions and for its appointment as "lead plaintiff." Washtenaw advanced the very same theory of accounting fraud, alleging that "[t]he true facts" were known by the defendants, but "concealed from the investing public during the Class Period." *Washtenaw* Compl., ¶ 65. In its PSLRA certification setting forth its transactions in Avid securities, Washtenaw disclosed that it purchased all of its Avid shares in March and April 2011, and sold them all in July and August 2011. According to Washtenaw's own allegations, then, it did not buy or sell Avid stock whose

---

[6] The Court may consider the entire document of a required SEC filing that is referenced in a PSLRA complaint. *See In re Stone & Webster, Inc. Sec. Litig.*, 253 F. Supp. 2d 102, 129 n. 10, 11 (D. Mass. 2003).

"artificial inflation" was "corrected" by disclosure of the "truth" over a year and a half later on February 25, 2013.[7]

The *Courtney* plaintiff has abandoned any claim to serve as "lead plaintiff," leaving Washtenaw as the only applicant for the role.[8]

## ARGUMENT

### I. WASHTENAW CANNOT ADEQUATELY "LEAD" ANY CLASS BECAUSE IT IS NOT EVEN A MEMBER OF ANY PURPORTED CLASS

The PSLRA instructs the Court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the Court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When multiple actions are filed, that decision shall not be made "until after the decision on consolidation is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). For the purpose of deciding who is "most capable" of serving as lead plaintiff, the court must adopt a "presumption" that the "most adequate" plaintiff is the person that: "(aa) has . . . filed [a] complaint or made a motion [for appointment]; (bb) . . . has the largest financial interest in the relief sought by the class; *and* (cc) otherwise satisfies the requirements of Rule 23. . . ." *Id*. That presumption is rebuttable upon a showing that the plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique

---

7 Washtenaw also alleges that the defendants concealed from the public that they were "experiencing 'internal challenges' in [Avid's] European sales division, one if [the company's] biggest markets." *Washtenaw* Compl., ¶ 17(a). This bald allegation, however, is meaningless. The complaint does not claim a single alleged misstatement by Avid related to the "structure of its European sales force." *Id*., ¶ 5.

8 Counsel for the plaintiff in *Courtney* have advised defense counsel of their intent not to oppose Washtenaw's motion, presumably because Courtney did not believe he could challenge Washtenaw's "presumptive" status based on the size of its purchase of Avid stock. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(bb). As shown herein, that is false. More importantly, the failure to conduct a more searching examination casts doubt on Mr. Courtney's own adequacy to "lead" a class action.

defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).[9]

Here, the four corners of Washtenaw's complaint make plain that Washtenaw would be an atypical and inadequate lead plaintiff. Washtenaw's divestment of its position in Avid securities a year and half before the alleged disclosure of the "truth" precludes it from pleading—much less establishing—the "loss causation" element of a securities cause of action.[10] By selling its shares before the "truth" emerged – indeed, eighteen *months* before – Avid's ostensible misrepresentations could "not have led to any loss." *Dura Pharms., Inc.*, 544 U.S. at 342. Washtenaw's untenable claim of a loss "caused" by Avid's disclosures *ex*tinguishes any claim of its own, and in turn *dis*tinguishes it from all other "members" of the purported class.

---

9 While certain courts in this district have ruled that a defendant lacks "standing" to challenge a movant's appointment as "lead plaintiff" under the PSLRA, *see, e.g.*, *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996) (Tauro, J.); *City of Bristol Pension Fund v. Vertex Pharms.*, No. 12-cv-11654, 2012 WL 6681907, at *4 (D. Mass. Dec. 21, 2012) (Saylor, J.) (relying on *Greebel*), other courts have discredited *Greebel*'s early reading of the PSLRA. As Judge Woodlock noted more recently, "a categorical rule that a court will not hear what a defendant might have to say at the lead plaintiff appointment stage is improvident. At each stage, a court benefits from whatever insights interested parties may have to offer." *In re Sonus Networks, Inc. Sec. Lit.*, 247 F.R.D. 244, 247 (D. Mass. 2007); *see also City of Pontiac Gen. Employees' Retirement Sys. v.. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 501 n. 3 (S.D.N.Y. 2012) (Rakoff, J.) (taking into account that there are no other plaintiffs challenging the appointment, nothing in the PSLRA "forbids a defendant from *arguing* against appointment" and that "defendants do have standing to challenge the motion"). After all, it makes no sense to let a class action that affects the rights of thousands of "absent" class members be prosecuted by a plaintiff with no claim just because the Court is left in the dark about the proposed "lead" plaintiff's *bona fides*. *A fortiori* the Court should consider what a defendant has to say when no proposed class member is available to inform the Court about such a fundamental inquiry. Surely, the proponent himself has no incentive to reveal his own inadequacies.

10 This is not to say that there is any merit whatsoever to the allegations that the defendants' fraudulently violated Generally Applicable Accounting Principles ("GAAP"). In all events, "[a] defendant's violation of GAAP is insufficient, by itself, to support a strong inference of scienter under the PSLRA," just as is "the fact that a defendant voluntarily restates income. . . ." *Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d 290, 306 (D. Mass. 2004) (Young, J.) (citations omitted). Here, the absence of an inference of purposeful footfaults under the accounting rules is facially contradicted by the two complaints, both of which reveal that Avid blew the whistle *on itself.*

### A. Washtenaw Cannot "Lead" Any Class Where It Lacks Any Cognizable Claim For Loss Causation Of Its Own

Washtenaw cannot "otherwise satisfy the requirements of Rule 23" because it lacks even a colorable argument for loss causation, an essential element of its claims under Section 10(b) of the Securities and Exchange Act and Rule 10b-5. *See Dura Pharms., Inc.*, 544 U.S. at 341-42. Washtenaw's trading history shows that all of its transactions occurred over a brief six month period in 2011, in which it bought and then sold its entire position fully a year and a half before its own allegations for when the "truth" about Avid's financial statements "emerged." *Compare Washtenaw* Compl., Decl. at 1 (all shares sold by Aug. 30, 2011) *with id.*, ¶¶ 71-72 ("truth" revealed on February 25, 2013). This is exactly the kind of in-and-out trading that the Supreme Court in *Dura* determined could not establish loss causation. *See Dura*, 544 U.S. at 342 ("If . . . purchaser sells the shares quickly *before* the relevant truth begins to leak out, the misrepresentation *will not have led to any loss*.") (emphasis added).

When selecting a lead plaintiff, the Court is entitled to "make pre-discovery loss causation determinations regarding asserted claims (or parts of asserted claims) that are based on the facts of the alleged complaint." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *5 (E.D.N.Y. Mar. 2, 2007). Washtenaw's complaint identifies no corrective disclosures related to the alleged accounting fraud that occurred prior to February 2013 and, critically, none that occurred prior to Washtenaw's sale of its Avid stock by August 2011. The only plausible inference is that Washtenaw was an "in-and-out" trader that purchased Avid stock at an allegedly "inflated" price but sold it at an equally "inflated" value before any "corrective" disclosure was made. That not only disables Washtenaw from proving loss causation. It also subjects to Washtenaw to unique defenses—about why and when it bought and sold—that create "a strong likelihood that [its] entire claimed losses will be

unrecoverable." That precludes appointment as lead plaintiff. *Porzio v. Overseas Shipholding Grp.*, No. 12 Civ. 7948, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) (in-and-out trader requesting to be lead plaintiff "cannot make the requisite 'preliminary showing' that it will satisfy the typicality and adequacy requirements of Rule 23"); *see also In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (rejecting a plaintiff that sold all shares prior to the issuance of the corrective disclosure because "whether [the plaintiff] can prove loss causation – or, for that matter, loss . . . . is, at the very least, subject to a unique defense . . ."); *Kops v. NVE Corp.*, No. 06-574, 2006 WL 2035508, at *6 (D. Minn. July 17, 2006) (rejecting an in-and-out plaintiff who sold all shares prior to the corrective disclosure).[11]

"Loss causation" for Washtenaw is also dispelled by its unique trading in Avid stock. The certification shows that Washtenaw bought and sold in tiny, odd amounts (*e.g.*, 32 shares, 17 shares, and the like), never in "round lots," and never even in whole dollar amounts. The inference is plain that Washtenaw pursued an unusual trading strategy, no doubt tied to some index or other exogenous metrics – but unrelated to the fundamentals of Avid's business or its disclosures. Timing aside, then, that pattern also establishes a unique defense to Washtenaw's claim that precludes its identification as a "typical," much less "adequate" representative of other investors. *See Applestein v. Medivation, Inc.*, No. C 10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 10, 2010) (plaintiff's transaction history suggesting day trading based on "technical price movements rather than price" gives rise to a unique defense) (internal citation omitted); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003) (precluding lead plaintiff from serving as the class representative where the plaintiff's employment as a day trader

---

[11] Washtenaw's allegations tacitly acknowledge this fundamental gap in its complaint by attempting to fabricate a second theory of fraud not found in the *Courtney* pleading. Washtenaw adds that Avid somehow misled investors about the "realignment" of Avid's European sales team. *Washtenaw* Compl., ¶ 66. The addition does not fill the gap because it does not establish a cognizable claim. The complaint does not allege a single misstatement related to the "realignment" of the sales team that any disclosure "corrected."

evidenced a focus on "technical price movements rather than price"); *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000) (plaintiff not "most adequate" where its trading pattern suggested "extensive daytrading").

**B. The Purposes Of The PSLRA Are Not Served By Appointing An Atypical Plaintiff With No Independent Claim as "Lead" Plaintiff**

The PSLRA was intended, among other things, "to curb frivolous, lawyer-driven litigation." *ACA Fin. Guar. Corp. v. Advest*, 512 F.3d 46, 56 (1st Cir. 2008). Here, the inference of manufactured litigation that arises from an eleventh-hour complaint and "lead plaintiff" motion by a party with a facially non-existent claim is ineluctable.[12] For that reason as well, Washtenaw's motion should be denied.

[12] It bears noting that Washtenaw is also a recidivist "lead plaintiff" applicant. Apart from the four "lead plaintiff" applications in the last three years it acknowledges in its certification, it has filed securities class actions or sought appointment as lead plaintiff in at least 5 other cases since 2002 as well. The notion that such an investor is so frequently defrauded, and so eager to leap to represent others, also permits the inference of the sort of mass-produced litigation the PSLRA was intended to curtail.

## CONCLUSION

For the foregoing reasons, Washtenaw's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel should be denied.

Dated: June 7, 2013

Respectfully submitted,

/s/ John D. Donovan, Jr.
John D. Donovan, Jr. (BBO #130950)
William J. Dunn (BBO #666465)
Michael J. Vito (BBO #675524)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Fax: (617) 951-7050
john.donovan@ropesgray.com
william.dunn@ropesgray.com
michael.vito@ropesgray.com

*Counsel for Defendants*
*Avid Technology, Inc., Gary G. Greenfield, and Kenneth A. Sexton*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on June 7, 2013.

Dated: June 7, 2013

/s/ William J. Dunn
William J. Dunn