**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETS**

| | |
|---|---|
| MICHAEL COURTNEY, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AVID TECHNOLOGY, INC. GARY G. GREENFIELD and KENNETH A. SEXTON,<br><br>Defendants. | **No. 13-cv-10686-WGY** |
| WASHTENAW COUNTY EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>AVID TECHNOLOGY, INC. GARY G. GREENFIELD and KENNETH A. SEXTON,<br><br>Defendants. | **No. 13-cv-11261-WGY** |

**MEMORANDUM OF LAW BY MICHAEL COURTNEY IN SUPPORT OF HIS APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL AND IN OPPOSITION TO THE COMPETING MOTION**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 3

I. COURTNEY SHOULD BE APPOINTED LEAD PLAINTIFF ..... 3

II. WASHTENAW DOES NOT HAVE STANDING TO PROSECUTE THE LITIGATION OR REPRESENT THE CLASS AS LEAD PLAINTIFF ..... 5

III. COURTNEY HAS THE LARGEST FINANCIAL INTEREST ..... 9

IV. COURTNEY'S CLAIMS OTHERWISE SATISFY RULE 23 REQUIREMENTS OF TYPICALITY AND ADEQUACY ..... 12

V. WASHTENAW IS SUBJECT TO UNIQUE DEFENSES AND HAS INTERESTS ANTAGONISTIC TO THE CLASS ..... 15

VI. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ..... 18

CONCLUSION ..... 19

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..... 14

*Applestein v. Medivation, Inc.*, No. C 10-00998,
2010 U.S. Dist. LEXIS 98255 (N.D. Cal. Sept. 20, 2010) ..... 11

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994) ..... 13

*Barr v. Matria Healthcare, Inc.*,
324 F. Supp. 2d 1369 (N.D. Ga. 2004) ..... 9, 15

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006) ..... 13, 14

*Bensley v. Falconstor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ..... 6

*Cole v. Health Mgmt Assoc., Inc.*, No. 07-cv-00484,
slip op. at 13 (M.D. Fla. May 14, 2008) ..... 11

*Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ..... 2, 10

*CornerStone Propane Ptnrs., L.P. Sec. Litig.*, No. C 03-2522,
2006 U.S. Dist. LEXIS 25819 (N.D. Cal. May 3, 2006) ..... 15

*Danis v. USN Communs., Inc.*,
189 F.R.D. 391 (N.D. Ill. 1999) ..... 13

*Dolan v. Axis Capital Holdings, Ltd.*,
2005 WL 883008 (S.D.N.Y. Apr. 13, 2005) ..... 4

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ..... 1, 2, 6

*Gluck v. Cellstar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ..... 13

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ..... 13

*Grodko v. Cent. European Distrib. Corp.*, No. 12-cv-5530-JBS,
2012 WL 6595931 (D. N.J. Dec. 17, 2012) .......... 4, 12, 16

*Impax Labs., Inc. Sec. Litig.*,
2008 U.S. Dist. LEXIS 104485 (N.D. Cal. Apr. 17, 2008) .......... 6

*In re Cendant Corp. Litig.*,
264 F.3d 201(3d Cir. 2001), .......... 12, 18

*In re Compuware Sec. Litig.*,
386 F. Supp. 2d 913 (E.D. Mich. 2005) .......... 16

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) .......... 11

*In re IMAX Sec. Litig.*,
2009 U.S. Dist. LEXIS 58219 (S.D.N.Y. 2009) .......... 17

*In re Imax Securities Litig.*,
272 F.R.D 138 (S.D.N.Y. 2010) .......... 5, 6, 16

*In re Microstrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 n. 12 (E.D. Va. 2000) .......... 4

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .......... 13

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 ) (S.D.N.Y. 2009) .......... 17

*In re Sterling Fin. Corp.*,
2007 WL 4570729 (E.D. Pa. Dec. 21, 2007) .......... 13, 14

*In re Veeco Instruments, Inc. Sec. Litig.*,
233 F.R.D. 330 (S.D.N.Y. 2005) .......... 16

*Jobie O v. Spitzer*, No. 03 Civ. 8331,
2007 WL 4302921 (S.D.N.Y. Dec. 5, 2007) .......... 5

*Jones v. Goord*,
435 F. Supp. 2d 221 (S.D.N.Y. 2006) .......... 5

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005) .......... 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........ 5

*Merrill Lynch Tyco Research Sec. Litig., 03 Civ. 4080*,
2004 U.S. Dist. LEXIS 2247 (S.D.N.Y. Feb. 18, 2004) ........ 9

*In re Olsten Sec. Litig.*,
3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) ........ 13

*Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-3451,
2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ........ 11

*Riordan v. Smith Barney*,
113 F.R.D. 60 (N.D. Ill. 1986) ........ 14

*Ruland v. lnfosonics Corp., No. 06 cv1231 BTM (WMC)*,
2006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006) ........ 11

*Schueneman v. Arena Pharms., Inc.*,
2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) ........ 11

*Simon v. Eastern Kentucky Welfare Rights Org.*,
425 U.S. 26 n.20 (1976) ........ 5

*Skwortz v. Crayfish Co, Ltd.*,
2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001) ........ 4

*Suez Equity Investors, L.P. v. Toronto Dominion Bank*,
250 F.3d 87 (2d Cir. 2001) ........ 6

*Switzenbaum v. Orbital Sciences Corp.*,
187 F.R.D. 246 (E.D. Va. 1999) ........ 4

*Warth v. Seldin*,
422 U.S. 490 (1975) ........ 5

**REGULATIONS**

15 U.S.C. § 78u 4(a) ........ *passim*

**RULES**

Fed. R. Civ. P. 23(a) ........ *passim*

Michael Courtney ("Courtney") respectfully submits this memorandum of law in support of his Appointment as Lead Plaintiff, approval of Courtney's selection of Pomerantz Grossman Hufford Dahlstrom & Gross LLP ("Pomerantz") as Lead Counsel and Shapiro Haber & Urmy LLP ("Shapiro") as Local Counsel for the Class; and in opposition to Washtenaw County Employees' Retirement System's ("Washtenaw") competing Motion (the "Motion").

## PRELIMINARY STATEMENT

Currently before the Court are two applications for appointment of Lead Plaintiff: Courtney's and Washtenaw's. Of the two proposed lead plaintiffs, however, only Courtney has cognizable losses pursuant to the Supreme Court's holding in *Dura Pharms., Inc.* v. *Broudo,* 544 U.S. 336 (2005). Indeed, Washtenaw sold all of its Avid Technology, Inc. ("Avid" or the "Company") shares more than **eighteen months** before the only corrective disclosure alleged in Courtney's complaint, caption above (the "Courtney Action"), thereby sounding the death knell of its loss causation allegations, and ultimately standing to pursue the claim.

In an attempt to fabricate some allegation of standing, Washtenaw sought to expand the Courtney Action's class period by over fourteen months by filing a new action on the <u>last</u> <u>day</u> of the deadline for filing a motion to be appointed lead plaintiff in the Courtney Action. Washtenaw did so by asserting a partial disclosure which has no relation to the fraud alleged in the Courtney Action, *i.e.*, <u>Avid's restatement of its financial statements due to issues arising from the Company's prior revenue recognition practices for software upgrades and enhancements</u>. Washtenaw Cmplt, ¶¶ 9-18, 71-78.

Contrary to the Courtney Action, the only allegation to support Washtenaw's claim for loss causation is the Company's July 2, 2011 disclosure of disappointing European sales, an allegation

wholly unrelated to the restatement. Washtenaw Cmplt, ¶¶ 5-6. While Washtenaw is free to pursue a claim related to disappointing European sales, it should do so in a separate action and not saddle the Courtney Action Class with a last minute pleading crafted solely to justify its pursuit of a Lead Plaintiff and Lead Counsel appointments.

There is no question that Washtenaw did not retain any Avid shares through the disclosure of the Company's restatement alleged in the Courtney Action, and that Washtenaw did not suffer any losses related to the disclosure thereof which could conceivably support the allegation of loss causation necessary under Section 10 of the Securities Exchange Act of 1934 (the "Exchange Act"). *See Dura,* 544 U.S. at 345 ("But if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"); *In re Comverse Tech., Inc. Sec. Litig.,* No. 06 Civ. 1825, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007). As such, Washtenaw simply does not have standing to pursue any claims regarding Avid's announced restatement, which is the gravamen of the Courtney Action.

In stark contrast, Courtney retained 547 shares through the alleged disclosure, and suffered losses of $970 under the LIFO methodology. Courtney, therefore, has the largest financial interest in this action and should be appointed Lead Plaintiff. Although Washtenaw claims it lost $28,169 related to its purchase and sales of Avid common stock during the class period, none of those losses are compensable in this action because it disposed of all of its Avid shares by August 30, 2011, **eighteen months prior to the only disclosure related to the Company's accounting for its software upgrades and enhancements*, which is the only corrective disclosure related to the Avid's restatement that is properly alleged in this Action.***

Absent cognizable losses, Washtenaw does not have standing to assert the claims alleged in the Courtney Action, nor represent the Class as the presumptive lead plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Assuming, *arguendo,* that Washtenaw could assert the claims alleged in the Courtney Action, the loss causation issues plaguing Washtenaw subject it to "unique defenses that render it incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(II). Such defenses will undoubtedly be raised at every stage of the case, threatening to become the focus of the litigation. They will almost certainly mean that Washtenaw will be dismissed from the Courtney Action at some point, particularly with respect to any claims regarding the Company's announced restatement, severely prejudicing the Class.

Unlike Washtenaw, Courtney not only has the largest financial interest in the outcome of this litigation, his claims are typical of other members of the Class, he does not have any interests antagonistic or in conflict with the Class, and he has retained experienced and competent counsel to prosecute this action on behalf of the Class. And, unlike Washtenaw, Courtney otherwise satisfies the requirements under Fed. R. Civ. P. 23 to represent the Class. Accordingly, his Motion for Appointment as Lead Plaintiff and for his selection of Lead Counsel should be granted.

## ARGUMENT

### I. COURTNEY SHOULD BE APPOINTED LEAD PLAINTIFF

Under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs, or purported class members, to appoint a lead plaintiff, filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) **has either filed the complaint** or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
>
> 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(emphasis added).

Here, Courtney filed his complaint against Avid on March 25, 2013, and his counsel caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of Avid securities that they had until May 24, 2013, to file a motion to be appointed as Lead Plaintiff. *See* Avid Investor Notice, Exhibit A.

Courts recognize that a party satisfies the requirements of the PSLRA for the purposes of appointment as lead plaintiff, where they either file a complaint in the action or a motion for appointment as lead plaintiff. *Dolan v. Axis Capital Holdings, Ltd.*, 2005 WL 883008, at *3 (S.D.N.Y. Apr. 13, 2005) (holding that party satisfied requirements of PSLRA where he filed a complaint in the action); *Grodko v. Cent. European Distrib. Corp.*, No. 12-cv-5530-JBS, 2012 WL 6595931, at *10 (D. N.J. Dec. 17, 2012) (over objection of competing movant, appointing as lead plaintiff party that only filed complaint, and did not file a motion), *Skwortz v. Crayfish Co, Ltd.*, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001) ("This Court reads the [PSLRA] to require a complaint or a timely filed motion" within the 60-day period); *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 433 n. 12 (E.D. Va. 2000) ("Motions filed after the 60 day period are untimely when field after the 60 day period when made by a class member who has not filed a complaint."); *Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 249-250 (E.D. Va. 1999) (to be considered as a lead plaintiff a party must either file a complaint or make a timely motion to that effect.)

As set forth below, Courtney satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

## II. WASHTENAW DOES NOT HAVE STANDING TO PROSECUTE THE LITIGATION OR REPRESENT THE CLASS AS LEAD PLAINTIFF

A basic tenet of American jurisprudence is that a plaintiff must have standing to assert the claims alleged. *Lujan* v. *Defenders of Wildlife,* 504 U.S. 555 (1992). To establish Article III standing, a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the defendant's actions and (3) that will likely be redressed by a favorable decision. *Id.* at 560-61.

A lead plaintiff in a securities class action must show that it personally has been injured, "not that injury has been suffered by other, unidentified members of the class to which [it] belong[s] and which [it] purport[s] to represent." *Warth* v. *Seldin,* 422 U.S. 490, 502 (1975); *see also See In re Imax Securities Litig.,* 272 F.R.D 138, 152 (S.D.N.Y. 2010) (if proposed lead plaintiff "is atypical, or lacks standing, it cannot be designated class representative, irrespective of any predominance analysis."); *see also Jobie O* v. *Spitzer,* No. 03 Civ. 8331, 2007 WL 4302921 at *3 (S.D.N.Y. Dec. 5, 2007) ("In order to represent a class, the named plaintiff must personally have standing to litigate his own claim.") (citing *Simon* v. *Eastern Kentucky Welfare Rights Org.,* 425 U.S. 26, 40 n.20 (1976)).

Moreover, standing must exist at the commencement of the litigation. *See Jones* v. *Goord,* 435 F. Supp. 2d 221, 255 (S.D.N.Y. 2006) ("standing is determined at the time the complaint is filed.").

Here, to state a claim under the Exchange Act, a plaintiff must show that an alleged misrepresentation made by a defendant "caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). The Supreme Court held that to establish loss causation, a

plaintiff must "prove that the defendants' misrepresentation . . . *proximately caused* the plaintiff's economic loss." *Dura Pharms., Inc.* v. *Broudo,* 544 U.S. 336, 345 (2005) (emphasis added). A plaintiff "must allege . . . that the *subject* of the fraudulent statement or omission was the cause of the actual loss." *Lentell* v. *Merrill Lynch & Co.,* 396 F.3d 161, 173 (2d Cir. 2005) (quoting *Suez Equity Investors, L.P.* v. *Toronto Dominion Bank,* 250 F.3d 87, 95 (2d Cir. 2001)) (emphasis in the original).

Accordingly, a shareholder who sells stock before the truth is disclosed suffers no actionable loss and therefore lacks standing to sue. *See, e.g., In re IMAX Sec. Litig.,* 272 F.R.D. 138, 152 (S.D.N.Y. 2010) (refusing to certify a class where a lead plaintiff "cannot establish loss causation" and therefore lacks standing to bring a claim in its individual capacity); *In re Impax Labs., Inc. Sec. Litig.,* 2008 U.S. Dist. LEXIS 104485, at *7 (N.D. Cal. Apr. 17, 2008) (dismissing lead plaintiff with prejudice for lack of constitutional standing where it could not demonstrate that it suffered an injury in fact when it sold all the shares before the corrective disclosure); *Bensley* v. *Falconstor Software, Inc.,* 277 F.R.D. 231, 240 (E.D.N.Y. 2011) ("the Court is concerned that if the Fund, as lead plaintiff, is unable to prove loss causation and is found to lack standing, the entire case could be dismissed."); *In re Source Corp. Sec. Litig.,* 04 Civ. 2351, 2006 U.S. Dist. LEXIS 41381, at * 22 (N.D. Tex. June 6, 2006) (dismissing lead plaintiff's individual claim for failure to show loss causation because "[a] plaintiff without a claim 'does not have standing to bring suit on behalf of a putative class.'").

Washtenaw does not have standing to bring a claim on behalf of the proposed class here because it sold **all of its shares** before the February 25, 2013 corrective disclosure. Indeed, it sold all of its shares 18 months before that disclosure. Nevertheless, Washtenaw has sought to represent the Class of all purchasers of Avid stock from January 29, 2010 through February 22,

2013, both dates inclusive, based on an unrelated disclosure on July 21, 2011. At the core of the first, and only other filed, action against Avid for securities violations, *i.e.,* the Courtney Action, is Avid's failure to properly account for revenues and costs related to its software upgrades and enhancements, resulting in a "significant," but at this time unknown, "adjustment of revenues and costs, and the related impact on income taxes." Courtney Cmplt. ¶¶ 3-4; Washtenaw Compl. ¶¶ 3, 4. Both the Courtney and Washtenaw complaints allege that the defendants began to disclose the truth regarding these accounting issues, which will result in a restatement, on February 25, 2013:

> Thereafter, on February 25, 2013, Avid disclosed that it would be unable to timely report its financial results for the fourth quarter of 2012 as it needed additional time "to evaluate its current and historical accounting treatment related to bug fixes, upgrades and enhancements to certain products which the Company has provided to certain customers.
>
> On this news, the market of avid common stock declined precipitously, falling almost 9% and closing at $6.98 per share on February 25, 2013, on unusually high trading volume of more than 500 thousand shares trading, more than six times the average daily volume over the preceding ten trading days.

Courtney Compl; ¶¶ 37-39; Washtenaw Compl. ¶¶ 9-10.

In July and August 2011, however—**more than one year and a half before** the February 25, 2013 disclosure — Washtenaw sold all 2,695 of its Avid shares. (ECF No. 8-3). Therefore, under the principles articulated by the Supreme Court in *Dura,* Washtenaw did not suffer any losses related to the disclosure on February 25, 2013 and, therefore, does not have standing to litigate any claims on its own behalf or on behalf of the Class grounded upon the February 25, 2013 disclosure. Exhibit B, (loss chart).

Under no stretch of the imagination can Washtenaw be found to have suffered **any** recoverable damages. Both the Courtney and Washtenaw Complaints make crystal clear that

the **only** corrective disclosure concerning the Company's restatement occurred on February 25, 2013, **more than eighteen months** after Washtenaw dumped all of its Avid shares.

Recognizing this inherent frailty, Washtenaw hastily filed a complaint on the last day of the PSLRA deadline alleging a new theory of liability based that "on July 21, 2011, Avid was forced to disclose that it had badly missed sales revenue targets it had led investors to expect, disclosing for the first time significant deficiencies in the structure of its European sales force that required that the entire division be restructured. On this news, the Company's stock plummeted 25% . . ." Washtenaw Compl. ¶¶ 5-6. Washtenaw's newly fabricated allegation forms the entire basis for its loss causation pleading, and represents little more than a transparent attempt to game the allegations of the well pleaded Courtney Action to usurp the appointment as Lead Plaintiff. While Washtenaw's gamesmanship is certainly audacious, it hardly compensates for its abject inability to pursue any claims regarding Avid's announced restatement, the core allegations of the Courtney Action.

Indeed, Washtenaw's allegation of missed sales targets in Avis's European division in July 2011 and the Courtney Action's allegation of significant revenue recognition errors related to "bug fixes, upgrades and enhancements", which resulted in a restatement of Avid's financials disclosed in February 2013, are wholly unrelated. Moreover, there is no credible basis to allege that Avid's July 2011 statements related to its European division were in any way related to, or a partial disclosure of, the anticipated restatement disclosed by Avid on February 25, 2013.

Significantly, the Washtenaw Complaint does not state that these two disparate allegations are related, much less explain the relatedness, but instead merely cobbles the July 2011 allegation onto the Courtney Action's allegations in an attempt to coopt the core restatement allegations from the Courtney Action for which Washtenaw has no standing to

pursue. Contrary to Washtenaw's sleight of hand, it is settled law that if a disclosure does "not discuss the subject matter of the alleged fraud, as a matter of law, the decline in [the Company's] trading price on that date cannot be considered a reaction to the disclosure of the alleged fraud." *In re Merrill Lynch Tyco Research Sec. Litig.,* 03 Civ. 4080, 2004 U.S. Dist. LEXIS 2247, at *8 (S.D.N.Y. Feb. 18, 2004) (cited in *Barr* v. *Matria Healthcare, Inc.,* 324 F. Supp. 2d 1369, 1380 (N.D. Ga. 2004)). Washtenaw may pursue a separate claim regarding the July 21, 2011 disclosure in a separate action, but it cannot wrest control of the Courtney Action Class's claims by simply appending its allegation onto the Courtney Action's complaint when it has not standing to pursue the Courtney Action's claims.

## III. COURTNEY HAS THE LARGEST FINANCIAL INTEREST

The PSLRA governs the selection of a lead plaintiff in class actions brought under the Securities Act or Exchange Act. 15 U.S.C. § 78u-4(a)(1). The PSLRA requires the court to consider all motions made by purported class members seeking appointment and to determine the member of the purported plaintiff class that is the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In making this determination, the court must adopt a presumption that the most adequate plaintiff is the person or group of persons who "has the largest financial interest in the relief sought by the class" and who otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption is not outcome-determinative, however, and is rebuttable upon proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(13)(B)(II).

Here, Courtney suffered $970 in losses related to his transactions in Avid securities. Moreover, he retained over 547 shares through the end of the Class Period. *See* Courtney Loss

Chart, Exhibit B. In contrast, Washtenaw has suffered no recoverable losses, because it sold all of its Avid stock in July and August 2011, more than eighteen months prior to Avid's corrective disclosure on February 25, 2013. *See* Washtenaw Loss Chart, Exhibit B. The core of the misstatements in the Courtney Action revolve around Avid's failure to properly account for software upgrades and enhancements, resulting in a significant restatement in the Company's previously-reported net earnings. Neither Washtenaw nor Courtney dispute that the only disclosure of those core statements occurs on February 25, 2013. *See* Washtenaw Compl. ¶¶ 8-15; Courtney Compl. ¶¶ 3-5, 37-40.

Indeed, as alleged in the both complaints, the first corrective disclosure regarding these accounting manipulations occurred on February 25, 2013, when the Company announced that it was delaying filing of its fourth quarter 2012 financial results to "evaluate current and historical accounting treatment related to bug fixes, upgrades and enhancements to certain products which the Company has provided to certain customers." *Id.* at ¶ 9. Cite to Courtney Compl. ¶ 37. More than 18 months prior to that date, August 30, 2011, Washtenaw had liquidated all of its 2,695 Avid shares. ECF No. 8-2, Exhibit B.

Under the loss causation principles articulated by the Supreme Court in *Dura,* Courts have overwhelmingly held that a Lead Plaintiff cannot claim a financial interest for losses suffered by shares sold prior to an alleged corrective disclosure. As Judge Garaufis in *In re Comverse Tech., Inc. Sec. Litig.,* No. 06 Civ. 1825, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. March 2, 2007) aptly noted:

> [I]t is clear that under *Dura* and its progeny, any losses that [Movants] may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation. While the *Dura* Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the recoverable losses calculation that

courts engage in when selecting a lead plaintiff.

Applying that standard, Judge Garaufis refused to appoint a lead plaintiff movant claiming losses for shares sold prior to the first alleged partial disclosure, despite the fact that it claimed more than eight times the losses alleged by the competing movant. *Id.* at *23-24.

Similarly, other courts have excluded from a movant's purported financial interest those losses incurred from shares sold prior to a partial corrective disclosure. *Schueneman v. Arena Pharms., Inc.,* 2011 U.S. Dist. LEXIS 87373, at *14 (S.D. Cal. Aug. 8, 2011) (application of *Dura* requires the Court to "disregard losses and gains resulting from trades that occurred prior to disclosure of the defendant's alleged fraud"); *Perlmutter* v. *Intuitive Surgical, Inc.,* No. 10-CV-3451, 2011 WL 566814, at *6 (N.D. Cal. Feb. 15, 2011) (in response to the Supreme Court's ruling in *Dura,* the Court applied "retained shares methodology," which considered only "the number of shares purchased during the class period that are retained at the end of the class period."); *Applestein* v. *Medivation, Inc.,* No. C 10-00998, 2010 U.S. Dist. LEXIS 98255, at *6 (N.D. Cal. Sept. 20, 2010) ("When calculating the greatest financial interest, the court utilizes the retained shares methodology, which primarily looks to shares bought during the class period that are retained at the end of the class period."); *Cole v. Health Mgmt Assoc., Inc.,* No. 07-cv-00484, slip op. at 13 (M.D. Fla. May 14, 2008) (attached as Exhibit C) ("when in-and-out transactions are ignored, the number of net shares purchased is the most significant factor") (citation omitted); *Ruland* v. *lnfosonics Corp.,* No. 06 cv1231 BTM (WMC), 2006 U.S. Dist. LEXIS 79144, at *16 (S.D. Cal. Oct. 23, 2006) ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery.") (internal quotations and citations omitted); *see also In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1107-08 (N.D. Cal. 2001) (holding that an evaluation of the number of net shares purchased is the "most straightforward method for approximation of financial interest in the recovery sought," and thus "the

number of net shares purchased during the class period is determinative" of which party has the largest financial interest).

Thus, bereft of any retained shares held through the alleged corrective disclosure on February 25, 2013, Washtenaw does not have ***any*** financial interest in the Courtney Action. Accordingly, Courtney has the largest financial interest in the outcome of the litigation and should be appointed Lead Plaintiff. *Grodko*, 2012 WL 6595931, at *5 ("The Court must not appoint a lead plaintiff that is subject to unique defenses that will prejudice the class. ***The Subsidiaries sold all their stock between nine and 12.5 months before the disclosures emphasized in the Grodko Complaint. A lead plaintiff whose losses do not relate, either temporally or topically, to the alleged wrongdoing will be subject to unique defenses regarding loss causation***.") (emphasis added).

## IV. COURTNEY'S CLAIMS OTHERWISE SATISFY RULE 23 REQUIREMENTS OF TYPICALITY AND ADEQUACY

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001), *cert. denied*, 535 U.S. 929 (2002). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class

certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997)); *In re Olsten Sec,. Litig.*, 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). *See In re Sterling Fin. Corp.*, 2007 WL 4570729, at *4 (E.D. Pa. Dec. 21, 2007) (noting that the "typicality requirement is satisfied if the plaintiff, as a result of the same course of conduct, suffered the injuries as the absent class members, and their claims are based on the same legal issues."). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of Courtney are typical of those of the Class. Courtney alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Avid, or omitted to state material facts necessary to make the statements they did make not

misleading. Courtney, as did all members of the Class, purchased Avid securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986). *See Sterling*, 2007 WL 4570729, at *4 (highlighting that the adequacy requirement is satisfied when "both the class representative and its attorneys are capable of satisfying their obligations, and neither has interests conflicting with those of the other class members."); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent,") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Courtney adequately represents the Class. There is no antagonism between Courtney's interests and those of the Class and his losses demonstrate that Courtney has a sufficient interest in the outcome of this litigation. Moreover, Courtney has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Indeed, in stark contrast to Washtenaw, Courtney: (1) purchased and retained shares through the alleged corrective disclosures, suffering significant compensable losses; (2) is not

subject to unique defenses relating to Article III standing; and, (3) has not demonstrated a willingness to compromise the interests of the Class for those of his own, by filing a last second complaint to add specious loss causation allegations in a gambit to assume the leadership of this action. As such, his interests are typical of and completely aligned with those of the Class.

In sum, Courtney's claims otherwise satisfy the requirements of typicality and adequacy pursuant to Rule 23 of the Federal Rules of Civil Procedure. Accordingly, Courtney should be appointed Lead Plaintiff to represent the Class.

## V. WASHTENAW IS SUBJECT TO UNIQUE DEFENSES AND HAS INTERESTS ANTAGONISTIC TO THE CLASS

In addition to having zero financial interest in these Actions, Washtenaw is plagued with unique defenses, which will haunt it, and by extension the Class, throughout the litigation. First, because it sold its Avid shares well before any appropriately alleged corrective disclosure, Washtenaw will find it impossible to establish a causal connection between Avid's alleged misrepresentations related to the restatement, and any injury that Washtenaw claims that it suffered, "as these misrepresentations were not disclosed until well after [the Subsidiary] had sold [its] stock at the still artificially inflated price." *Barr* v. *Matria Healthcare, Inc.,* 324 F. Supp. 2d 1369, 1380 (N.D. Ga. 2004) (dismissing plaintiff that sold its stock four months prior to the disclosure of the alleged misrepresentations). *In re CornerStone Propane Ptnrs., L.P. Sec. Litig.,* No. C 03-2522, 2006 U.S. Dist. LEXIS 25819, at *24-30 (N.D. Cal. May 3, 2006) (excluding from class those who bought and sold stock prior to corrective disclosure). Given its inability to plead loss causation, Washtenaw is certainly "subject to unique defenses that render it incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(II).

Indeed, at all stages of the litigation—motion to dismiss, class certification and summary judgment—defendants are certain to raise this loss causation defense in an attempt to dismiss or

stall the progress of this Action. *See, e.g., In re Compuware Sec. Litig.,* 386 F. Supp. 2d 913, 920 (E.D. Mich. 2005) (granting summary judgment to defendants because plaintiff has sold defendants' shares before disclosure of the misrepresentation). Appointing a lead plaintiff plagued with such unique frailties would foist an unnecessary burden on the Class. Accordingly, courts have consistently rejected lead plaintiff movants that were subject to unique loss causation defenses. *In re Imax Sec. Litig.,* 272 F.R.D. 138, 155 (S.D.N.Y. 2010) ("In sum, because we find that Snow Capital cannot establish loss causation—and, at a minimum, is subject to unique defenses which may threaten to become the focus of the litigation . . . we cannot certify a class with it as class representative."); *In re Veeco Instruments, Inc. Sec. Litig.,* 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (where a lead plaintiff movant had sold all of its stock "prior to the issuance of the curative disclosure," the movant was "subject to a unique defense to which [the competing movant was] not subject."). Indeed, Washtenaw simply has no ability to pursue a claim relating to the Company's restatement of financials, as it sold its shares more than eighteen months prior to the first disclosure thereof. Defendants will attack Washtenaw at every stage in the case regarding this obvious frailty, subjecting the Class to unnecessary defenses, which if successful, could result in the successful dismissal of those compelling claims. There is simply no need to saddle the class with such potentially fatal defenses at this early stage of the litigation. *Grodko*, 2012 WL 6595931, at *8 ("[a] proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation. ***The Subsidiaries are subject to a unique defense regarding whether they can establish loss causation from the events that form the core of this action. The Subsidiaries' motion for lead plaintiff appointment will be denied because the Court cannot prejudice the class with the time and expense that will probably ensue from litigating the unique loss***

***causation defense to which only the Subsidiaries are subject***.") (emphasis added) (internal citations omitted).

Such an appointment would be particularly inappropriate here, where competing movant Courtney is eminently qualified to serve as Lead Plaintiff for the Class. *In re IMAX Sec. Litig.,* 2009 U.S. Dist. LEXIS 58219, at *10-11 (S.D.N.Y. 2009) (quoting *In re SLM Corp. Sec. Litig.,* 258 F.R.D. 112, 116) (S.D.N.Y. 2009) ("Weschester Capital now 'faces unique legal issues that other class members do not.' Were we to permit it to continue as lead plaintiff, it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal. There seems little reason for us to subject the class members to such a risk.").

Washtenaw also has interests antagonistic to the Class with respect to calculating and allocating loss. The Courtney Action requires investors to have held through February 25, 2013 in order to have damages. In calculating damages for settlement purposes and at trial, it is not in the interests of the Courtney Action Class to allocate funds to class members whose claims are based on an unrelated disclosure that was more than 18 months earlier. Given the fact that it has no compensable losses for the restatement disclosure, Washtenaw simply has no interest in establishing the proof necessary to establish that claim. Indeed, Washtenaw will spend time and resources on proving liability and damages for events that are wholly irrelevant to the Courtney Action, and then attempt to extract money from Avid to pay Washtenaw's claims rather than spend that money to pay the claims related to the alleged restatement.

This basic antagonism exposes the fundamental unfairness of Washtenaw's last minute filing of a complaint to wrest control of a case from the Courtney Action Class. In an attempt to control the litigation, and mask its glaring inadequacies, Washtenaw and its counsel -- on the eve

of the lead plaintiff deadline--have taken a wholly unrelated disclosure which occurred more than eighteen months prior to the alleged corrective disclosure, and foisted that claim on the Class' compelling restatement allegations. The primary beneficiary of that scheme is Washtenaw and its counsel—not the Class. Nothing in the Washtenaw complaint enhances the core claims expressed in the Courtney Action: Avid's misleading financial reporting and resulting restatement. Yet, if Washtenaw wrests control of those claims, its interests will not be in maximizing the Courtney Action's claims, as it has no damages attributable to those claims, but instead in maximizing the value of claims based on the purported July 2011 disclosure which is the sole basis for Washtenaw's claim of damages. Simply put, Washtenaw cannot at the last possible moment surgically impose wholly unrelated allegations on the Class to mask its own inadequacies.

In sum, Washtenaw's claims are not typical of the Class's claims, and Washtenaw is not adequate to represent the Class. Accordingly, Washtenaw should not be appointed as lead plaintiff here.

## VI. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). *See Cendant*, 264 F.3d at 276 (emphasizing that the PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.").

Here, Courtney has selected Pomerantz as Lead Counsel and Shapiro as Local Counsel. Pomerantz and Shapiro are highly experienced in the area of securities litigation and class

actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors as detailed in the firm's resumes. *See* Pomerantz and Shapiro Firm Resumes, Exhibits D and E. As a result of each firm's extensive experience in litigation involving issues similar to those raised in this action, Courtney's counsel have the skill and knowledge which will enable them to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Courtney's selection of Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Courtney respectfully requests that the Court (i) appoint Courtney as Lead Plaintiff for the Class; (ii) approve Courtney's selection of Pomerantz as Lead Counsel and Shapiro as Local Counsel for the Class; and (ii) deny Washtenaw's Motion for Appointment as Lead Plaintiff, Approval of Selection of Counsel.

Dated: June 7, 2013
New York, New York

Respectfully submitted,

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**

*/s/ Jeremy A. Lieberman*

Marc I. Gross
Jeremy A. Lieberman
Emma Gilmore
600 Third Avenue, 20th Floor
New York, N.Y. 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
migross @pomlaw.com
jalieberman@pomlaw.com
egilmore@pomlaw.com

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

**SHAPIRO HABER & URMY LLP**
Edward F. Haber (BBO # 215620)
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
ehaber@shulaw.com

***Counsel for Michael Courtney and Proposed Lead Counsel and Local Counsel for the Class***

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman